IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN HARRIS MASTERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| LISA JENKINS, AND DREAMFLY PRODUCTIONS, L.L.C., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff John Harris Masterson files this Complaint against Defendants Lisa Jenkins and Dreamfly Productions, L.L.C. and respectfully shows this Court as follows:

1.  In 2005, Plaintiff Masterson created and developed a reality-based television series called *The Starting Pointe*. This television series follows the lives of dancers, producers, and artistic directors in the Texas Ballet Theater and showcases the efforts required to prepare and produce a ballet production. In 2010, Defendants Lisa Jenkins and Dreamfly Productions began assisting Plaintiff in the pre-production activities for the show as co-producers. After leaving *The Starting Pointe*, Jenkins and Dreamfly Productions agreed to assign all of their rights in the show to Masterson, and further agreed to provide all copies of any footage, film, editing, work product, scripts, and other documents relating to the show to Masterson. Defendants, however, failed to return these documents to Plaintiff, and shortly thereafter, began producing an extremely similar, if not identical, reality-based ballet series named *En Pointe*, using the trade secret and confidential information that they acquired due to their relationship with Plaintiff. Plaintiff has demanded that Defendants cease the production of *En Pointe* and refrain from using Plaintiff's confidential and trade secret information in violation of the parties' agreement. Nevertheless, Defendants continue to produce and market *En Pointe* using Plaintiff's trade secrets and confidential information, in direct violation of Plaintiff's copyright rights and the

agreement between the parties. Defendants' unauthorized copying and use of Plaintiff's trade secrets has and will continue to harm Plaintiff by hindering his ability to obtain a network contract for his original television series, *The Starting Pointe*.

## THE PARTIES

2. Plaintiff John Harris Masterson ("**Plaintiff**" or "**Masterson**") is a producer of television shows and movies. Mr. Masterson is a citizen of the State of Texas.

3. Defendant Lisa Jenkins ("**Jenkins**") is a Texas resident who may be served with process at 3300 Dartmouth Avenue, Dallas Texas 75205, or at 3107 Cole Avenue, Dallas Texas 75204.

4. Defendant Dreamfly Productions, L.L.C. ("**Dreamfly Productions**") is a Texas limited liability company organized and existing under the laws of the State of Texas. Defendant Dreamfly Productions has its principal place of business in the State of Texas at 3107 Cole Avenue, Dallas, Texas 75204, and may be served with process by serving its registered agent, Lisa Jenkins, at 3131 McKinney Ave, Ste. 215, Dallas, Texas 75204.

## JURISDICTION AND VENUE

5. This is an action for copyright infringement under the Copyright Act of 1976, as amended 17 U.S.C. § 101 *et seq.*, and for trade secret misappropriation, and breach of contract. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This Court has supplemental jurisdiction over Plaintiff's claims of trade secret misappropriation and breach of contract asserted against Defendants, pursuant to 28 U.S.C. §1367(a), because these claims are so related to Plaintiff's copyright infringement claim that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper under 28 U.S.C. § 1391(b) and/or 1400(a) because Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTUAL BACKGROUND

8. In 2005, Plaintiff Masterson created and developed an original reality-based television series called *The Starting Pointe*. This series follows those involved with the Texas Ballet Theater and showcases the lives of the company's dancers, choreographers, directors, and the staff through their rehearsal process and the performance of a ballet production. This reality-based television series constitutes copyrightable subject matter under the laws of the United States.

9. Plaintiff registered *The Starting Pointe* series with the Writers Guild of America, West, Inc. in November 2006. Plaintiff also complied in all respects with the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, and all other laws involving copyright, with regard to *The Starting Pointe*. Specifically, in 2009, Plaintiff applied for and obtained a copyright registration on *The Starting Pointe*. The Certificate of Registration affirms that Plaintiff is the owner and claimant of U.S. Copyright Reg. No. TXu001627772 for *The Starting Pointe*, and this registration is dated effective March 3, 2009 (hereinafter referred to as the "**Copyrighted Work**"). Since the date of the Copyrighted Work's creation, Plaintiff has been the sole proprietor of all legal rights, title and interest in and to the copyright on *The Starting Pointe*. Plaintiff has not licensed or authorized any third party to reproduce, create derivative works based on, distribute unauthorized copies of, or publicly display the Copyrighted Work.

10. In August of 2010, Plaintiff was introduced to Lisa Jenkins of Dreamfly Productions. Dreamfly Productions is a film/video production company based in Dallas, Texas. Plaintiff began working with Defendant Jenkins to produce a television series entitled *Speed Shift*. Early on in their relationship, Plaintiff told Jenkins about *The Starting Pointe* and Jenkins expressed an interest in working on the production of this project. In September 2010, Plaintiff hired Jenkins and Dreamfly Productions to assist with the production of *The Starting Pointe*.

11. During the pre-production work, Jenkins and Dreamfly Productions had access to all confidential materials relating to *The Starting Pointe*, including scripts, dancer and artistic staff interviews, production notes, market data, presentation decks for the networks, and

advertising research. Jenkins also attended and participated in meetings with the Texas Ballet Theater, assisted with development of the production budget, and learned the crew, equipment, and logistical requirements for producing *The Starting Pointe*, all of which are kept confidential and protected by Masterson as trade secrets. As co-producer, Jenkins and Jenkins' employer Dreamfly Productions, had a duty to maintain the secrecy of Masterson's trade secrets, and not to disclose them to others.

12. After several months of pre-production work, Masterson's and Jenkins' relationship deteriorated. In February 2011, Masterson terminated his relationship with Jenkins and Dreamfly Productions, advising Defendants that he would no longer be in need of their production services.

13. Following Defendants' termination, on or about March 3, 2011, counsel for Dreamfly Productions contacted Masterson to demand payment of expenses allegedly incurred during the production of *The Starting Pointe*. After negotiations between counsel, in April of 2011, Masterson, Jenkins, and Dreamfly Productions settled their fee dispute and the parties signed a Settlement and Complete Mutual Release Agreement and Assignment ("**Agreement**"). Defendant Jenkins signed this Agreement individually and on behalf of Dreamfly Productions as CEO. Under this Agreement, Jenkins and Dreamfly Productions assigned any and all rights in *The Starting Pointe* and *Speed Shift* to Masterson and further agreed to return all work product for both series, including but not limited to footage, film, editing, scripts, files, and electronic images to Masterson within ten days of the signing of the Agreement. Nothing was returned relating to *The Starting Pointe*.

14. On July 15, 2011, just three months after the signing of the Agreement, Jenkins and Dreamfly Productions issued a press release announcing the creation of a new reality series featuring the Miami City Ballet entitled "*En Pointe*" (hereinafter referred to as "**the Infringing Work**" or "**En Pointe**"). The press release for *En Pointe* described the series as a "never-before-seen true story of mesmerizing performance artists and dancers that will entertain all audiences" and purports to tell the "real story" of what goes on behind the curtain in connection with a ballet production. Based on this press release, and on information and belief, it is clear that this new

show has the same format, same subjects, similar film footage, same perspective and same recurring themes as *The Starting Pointe*, in violation of Plaintiff's copyright. Furthermore, upon information and belief, Defendants have used Plaintiff's trade secrets to develop and market *En Pointe* in breach of the confidential relationship between Plaintiff and Defendants.

15.    During the pre-production work, Jenkins and Dreamfly Productions had access to various confidential materials relating to *The Starting Pointe*, including scripts, dancer and artistic staff interviews, production notes, market data, presentation decks for the networks, and advertising research. Jenkins also attended and participated in meetings with the Texas Ballet Theater, assisted with development of the production budget, and learned the crew, equipment, and logistical requirements for producing *The Starting Pointe*, all of which are kept confidential and protected by Masterson as trade secrets. As co-producer, Jenkins and Jenkins' employer Dreamfly Productions, had a duty to maintain the secrecy of Masterson's trade secrets, and not to disclose them to others.

16.    Immediately thereafter, in August 2011, Plaintiff hired counsel and demanded that Defendants immediately cease and desist from any production, marketing, the issuance of any public statements, or involvement in the production of the television series *En Pointe*. Defendants responded by claiming that the series was the brainchild of Laura Wright, and counsel for Jenkins advised there was no ongoing business relationship with Defendants with regard to the production of *En Pointe*.

17.    Plaintiff has recently learned that this is false. Defendants, willfully and with full knowledge of the copyright infringement, have continued to infringe Plaintiff's Copyrighted Work by continuing to produce and develop *En Pointe*. Defendants have used and continue to improperly use the confidential and trade secret information that Defendants acquired during the production of *The Starting Pointe* to produce *En Pointe* to Plaintiff's injury and in violation of the Agreement.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

### (Against All Defendants)

18. Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

19. *The Starting Pointe* series constitutes an original work of authorship fixed in a tangible medium of expression entitled to protection under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

20. In compliance with the Copyright Laws of the United States, Plaintiff's copyright in the Copyrighted Work was duly registered in the United States Copyright Office in the name of Plaintiff.

21. Plaintiff is the sole owner of all right, title and interest in and to the copyright in the Copyrighted Work, and Plaintiff's copyright in the Copyrighted Work is valid and subsisting.

22. Defendants had reasonable opportunity to access and copy *The Starting Pointe* by virtue of their work with Plaintiff and status as co-producer of *The Starting Pointe*.

23. After the dates of copyright registration of the Copyrighted Work, Defendants deliberately, knowingly and willfully copied Plaintiff's Copyrighted Work through the creation of the Infringing Work, *En Pointe*.

24. The Infringing Work is identical or strikingly similar to Plaintiff's Copyrighted Work and constitutes an unauthorized copy or derivative work thereof.

25. Plaintiff has notified Defendants on multiple occasions that Defendants have infringed on Plaintiff's copyright, but Defendants continue to infringe Plaintiff's copyright.

26. Defendants have infringed and continue to infringe on Plaintiff's Copyrighted Work in violation of 17 U.S.C. §§ 106 and 501(a), by reproducing, manufacturing, distributing, and displaying the Infringing Work, *En Pointe*. Defendants' acts were further done with actual or constructive knowledge of Plaintiff's copyright in the Copyrighted Work and constitute willful and malicious infringement of those rights.

27. Plaintiff has been and will continue to be damaged by reason of Defendants' infringement of Plaintiff's copyright, and Plaintiff has sustained and will continue to sustain substantial and irreparable injury and loss, and damages as a result of Defendants' infringement of Plaintiff's copyright.

28. By reason of their infringement of Plaintiff's copyright as alleged above, Defendants are jointly and severally liable to Plaintiff for the actual damages incurred by Plaintiff as a result of Defendants' infringement and any additional profits of Defendants attributable to the infringement, or statutory damages pursuant to 17 U.S.C. § 504(a)-(c).

29. Additionally, pursuant to 17 U.S.C. § 505, Plaintiff is entitled to an award of attorneys' fees and costs as a prevailing party.

## SECOND CLAIM FOR RELIEF

### Trade Secret Misappropriation

### (Against All Defendants)

30. Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

31. Plaintiff is the owner and holder of certain trade secrets and other confidential and proprietary information, relating to *The Starting Pointe*, including, but not limited to, scripts, dancer and artistic staff interviews, production notes, market data, presentation decks for the networks, and advertising research, all of which are kept confidential and protected by Plaintiff as trade secrets.

32. Due to Defendants' relationship with Plaintiff, Plaintiff entrusted Defendants with this confidential and trade secret information strictly for purposes of producing *The Starting Pointe* and only to be used in connection therewith.

33. After the termination of Plaintiff and Defendants' relationship, Defendants continued to use and disclose Plaintiff's confidential and trade secret information for their own commercial advantage, and to the detriment of Plaintiff, through the production and development

of *En Pointe*. On information and belief, Defendants have misappropriated, continue to misappropriate, and will likely misappropriate in the future Plaintiff's trade secrets and confidential information.

34. As a direct and proximate result of these wrongful acts, Defendants have caused Plaintiff to suffer damages.

35. Defendants' conduct has caused and unless enjoined will continue to cause Plaintiff irreparably harm and injury for which there exists no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

### (Against All Defendants)

36. Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

37. Plaintiff and Defendants Jenkins and Dreamfly Productions are parties to the Agreement, which is a valid, binding and enforceable contract.

38. Plaintiff has performed and/or tendered performance of its obligations under the Agreement. All conditions precedent have been performed or have occurred.

39. Based on information and belief, Defendants have breached the Agreement with Plaintiff by failing to return to Plaintiff all of the work product for *The Starting Pointe* within the time requirements stated in the Agreement, and by using such information to produce the television series *En Pointe* in violation of paragraph 2 of the Agreement.

40. As a direct and proximate result of the breach of the Agreement, Defendants have caused Plaintiff to suffer damages, including lost profits, impairment of future earning capacity, and loss of trade secrets and confidential information.

## FOURTH CLAIM FOR RELIEF

### Application for Injunctive Relief

### (Against All Defendants)

41.     Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

42.     Plaintiff will likely suffer irreparable injury if Defendants are not enjoined while this suit is pending, from continuing to develop, produce, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, or manufacture copies of *En Pointe* and any confidential documents or trade secret information relating to Plaintiff's Copyrighted Work.  If Defendants are not enjoined against engaging in these acts during the pendency of the lawsuit, among other things, Plaintiff's ability to obtain a contract with television network will be thwarted and/or will be significantly harmed.

43.     Moreover, there is no adequate remedy at law to rectify the actual and prospective loss to Plaintiff as a result of Defendants' continued copyright infringement, and misappropriation of Plaintiff's confidential information and trade secrets because Plaintiff will be unlikely to obtain a contract with a television network if Defendants continue to engage in the aforementioned actions.  The recovery of monetary damages alone cannot prevent the further use or disclosure of the confidential information and trade secrets which Defendants have misappropriated or the unlawful infringement of Plaintiff's Copyrighted Work.

44.     There is a substantial likelihood that Plaintiff will prevail on the merits of this case because Defendants' infringement of Plaintiff's Copyrighted Work and misappropriation of Plaintiff's trade secrets and confidential information, as described above, are clear violations of their legal obligations for which no reasonable defense can be offered.

45.     The harm faced by Plaintiff outweighs the harm that would be sustained by Defendants if the preliminary injunction were granted because if Defendants are allowed to proceed forward in producing and marketing *En Pointe* using Plaintiff's Copyrighted Work, this will impair Plaintiff's ability to produce such a television series.

46. The public interest favors issuance of the requested injunctive relief and will be served by the protection of intellectual property rights and trade secret and confidential information.

47. Plaintiff is willing to post a bond in the amount, if any, that the Court deems reasonably appropriate.

48. Plaintiff asks the Court to include its application for injunctive relief in a full trial on the merits of this case and, after the trial, to issue a permanent injunction against Defendants, as well as to provide Plaintiff with the other relief he has requested.

## FIFTH CLAIM FOR RELIEF

**Attorney's Fees**

**(Against All Defendants)**

49. Plaintiff refers to and incorporates herein by this reference each and every allegation in the foregoing paragraphs, as well as those in the paragraphs that follow, as though fully set forth herein.

50. As a result of Defendants' conduct, Plaintiff retained counsel to prosecute this action against Defendants. Defendant is entitled to recover the reasonable and necessary attorneys' fees and costs in this action pursuant to United States and Texas law. Specifically, the copyright infringement claim plead herein meets the requirements for an award of attorneys' fees and costs under 15 U.S.C. § 1117(a), and Plaintiff is entitled to recover such fees and costs. Additionally, Plaintiff is entitled to an award of its attorney's fees and costs pursuant to paragraph 6 of the Agreement between the parties.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues as to which a jury is available, as provided by Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor, and against Defendants, and each of them, including orders, as follows:

A. A judgment that Defendants have infringed Plaintiff's copyright;

B. That Plaintiff recover from Defendants all of Defendants' profits or statutory damages from the aforesaid acts of copyright infringement;

C. That Plaintiff recover from Defendants three times the amount of Plaintiff's actual damages for copyright infringement;

D. That Defendants and their agents, servants, attorneys, employees, any companies owned or controlled by Defendants, and their affiliates, successors and assigns, and all of those in active concert or participation with any of them who receive notice directly or otherwise, be enjoined and restrained, during and after this lawsuit, from:

   a. Infringing Plaintiff's copyright in any manner or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, produce, or manufacture copies of the Plaintiff's Copyrighted Work; and

   b. Continuing to use and disclose Plaintiff's trade secrets and confidential information relating to The Starting Pointe;

E. That Plaintiff be awarded his reasonable attorney's fees and costs incurred in this proceeding;

F. That Plaintiff be awarded pre-judgment and post-judgment interest as allowed by law; and

G. That the Court grant Plaintiff such other and further relief as Plaintiff may be justly entitled.

Dated: January 23, 2012.

                                                Respectfully submitted,

By: /s/ Aaron Davidson
**AARON DAVIDSON**
Texas State Bar No. 24007080
**PRISCILLA DUNCKEL**
Texas State Bar No. 00787403
**ELIZABETH K. STANLEY**
Texas State Bar No. 24060651
aaron.davidson@bakerbotts.com
Priscilla.dunckel@bakerbotts.com
elizabeth.stanley@bakerbotts.com

2001 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: 214.953.6500
Facsimile: 214.953.6503

**ATTORNEYS FOR PLAINTIFF
HARRIS MASTERSON**